AMERICAN NAT. BANK OF DENVER v. SUPPLEE et al.

(Circuit Court of Appeals, Third Circuit. April 30, 1902.)

No. 23.

1. CORPORATIONS—ACTION AGAINST STOCKHOLDERS—CONCLUSIVENESS OF JUDGMENT AGAINST CORPORATION.

A judgment against a Kansas corporation, rendered in that state, is conclusive upon a stockholder in an action against him to enforce his individual liability under the constitutional and statutory provisions of the state, unless impeached for want of jurisdiction or for fraud and collusion in its procurement.[1]

2. JUDGMENT—IMPEACHMENT FOR FRAUD.

To impeach such a judgment sued on for fraud and collusion, where it is fair and regular on its face, the burden rests on the defendant to prove his allegations by evidence that is clear, precise, and indubitable, and such proof must establish fraud on the part of both plaintiff and defendant in the judgment. A finding against the validity of the judgment is not supported by evidence which leaves the question of fraud as to either of the parties to rest alone on suspicion or surmise, nor can any inference of fraud be drawn from the fact that no defense was made to the action, unless it is clearly shown that a valid defense existed.

3. SAME.

Evidence considered, and *held* insufficient to warrant the submission to a jury of the question of the validity of a judgment attacked by defendants on the ground that it was procured through fraud and collusion.

Gray, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

H. T. Ames, for plaintiff in error.

G. M. Tustin and James Scarlett, for defendants in error.

Before GRAY, Circuit Judge, and BRADFORD and J. B. McPHERSON, District Judges.

BRADFORD, District Judge. This is a writ of error to the circuit court for the western district of Pennsylvania, in an action of assumpsit, wherein judgment was rendered on the verdict of a jury in favor of the defendants in error, Horace G. Supplee and Albert Girton, executors of George W. Supplee, deceased. The action is founded on a judgment recovered in the United States circuit court for the district of Kansas, by the plaintiff in error, the American National Bank of Denver, against the Western Farm Mortgage Trust Company, a corporation of Kansas, June 1, 1896, for the sum of $5,933, besides interest and costs, and was brought to enforce against the executors an alleged statutory liability of George W. Supplee as an owner of stock of the Kansas corporation of the par value of $5,000. Section 2, art. 12, of the constitution of Kansas provides as follows:

"Dues from corporations organized and existing under the laws of the state of Kansas shall be secured by individual liability of the stockholders equal to the amount of stock owned by each stockholder, and such other means as shall be provided by law."

---

[1] See Corporations, vol. 12, Cent. Dig. § 1024.

Section 32, c. 23, of the General Statutes of 1889 of that state, provides as follows:

"If any execution shall have been issued against the property or effects of a corporation, except a railway, religious or charitable corporation, and there cannot be found any property whereon to levy such execution, then execution may be issued against any of the stockholders to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; but no execution shall issue against any stockholder except upon an order of the court in which action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in·writing to the person or persons sought to be charged; and upon such motion, such court may order execution to issue accordingly; or·the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

Under the foregoing constitutional and statutory provisions it is settled that a judgment creditor of a Kansas corporation, other than a railway, religious or charitable corporation, may on the return of an execution unsatisfied, maintain in any court of competent jurisdiction an action founded on his judgment to enforce the statutory liability of one who was a stockholder when the claim against or indebtedness of the corporation accrued or was created. To such a stockholder or his estate the statutory liability attaches, and a judgment rendered against the Kansas corporation is binding and conclusive, unless the judgment is void for want of jurisdiction of the court over the parties or subject-matter, or it has been procured by fraud and collusion of the parties. If the judgment against the Western Farm Mortgage Trust Company, hereinafter referred to as the Kansas corporation, was valid, it on the return of an execution unsatisfied conclusively established the right of the plaintiff in error to enforce against the stockholders of such corporation, as in privity with or under contractual obligations to it, their statutory liability under the laws of Kansas. Bank v. Farnum, 176 U. S. 640, 20 Sup. Ct. 506, 44 L. Ed. 619; Whitman v. Bank, 176 U. S. 559, 20 Sup. Ct. 477, 44 L. Ed. 587. In the first mentioned case the court, through Mr. Justice Brewer, said:

"This case brings to our consideration the same constitutional and statutory provisions of the state of Kansas which were before us in Whitman v. Oxford National Bank, ante, 563 [20 Sup. Ct. 478, 44 L. Ed. 619]. In that case we decided that a plaintiff, after the recovery of a judgment against a Kansas corporation in the courts of Kansas, and the return of an execution unsatisfied, could maintain an action in any court of competent jurisdiction against a stockholder of the corporation to recover in satisfaction of his judgment an amount not exceeding the par value of the defendant's stock. It is unnecessary to rediscuss the questions there considered. * * * The Constitution declares that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State, and that Congress may not only prescribe the mode of authentication but also the effect thereof. Section 905 prescribes such mode, and adds that the 'records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken.' * * * What then is the faith and credit given by law or usage in the courts of Kansas to a judgment against a corporation? What is the effect of such a judgment as there established? This is a question not answered by referring to general principles of law, by determining what at common law was the significance and effect of a judgment, but can be answered only by

an examination of the decisions of the courts of Kansas. The law and usage in Kansas, prescribed by its legislature and enforced in its courts, make such a judgment not only conclusive as to liability of the corporation, but also an adjudication binding each stockholder therein. We do not mean that it is conclusive as against any individual sued as a stockholder that he is one, or if one, that he has not already discharged by payment to some other creditor of the corporation the full measure of his liability, or that he has not claims against the corporation, or judgments against it, which he may, in law or equity, as any debtor, whether by judgment or otherwise, set off against a claim or judgment, but in other respects it is an adjudication binding him. He is so far a part of the corporation that he is represented by it in the action against it. Ball v. Reese, 58 Kan. 614 [50 Pac. 875, 62 Am. St. Rep. 638]. In that case it was said, correcting an inference which was sought to be drawn from language in the case of Howell v. Manglesdorf, 33 Kan. 194 [5 Pac. 759], in respect to the effect of a judgment against a corporation (pp. 617, 618 [58 Kan., and p. 876, 50 Pac., 62 Am. St. Rep. 638]): 'The general holding in this court has been that a judgment is final and conclusive between the parties and their privies; and we think it must be held that every stockholder in a corporation is so privy in interest in an action against the corporation that he is bound by the judgment against it. In the absence of fraud and collusion, the judgment must be held to be final and conclusive against the stockholder if the court rendering it has final jurisdiction. As the judgment was valid, the court committed error in allowing the defendant to go behind it and contest matters which were conclusively settled by the judgment against the corporation.' This representative character of the corporation has been affirmed by this court in several cases. * * * Now, as the judgment rendered in the Kansas court is in that State not only conclusive against the corporation but also binding upon the stockholder, it must, in order to have the same force and effect in other States of the Union, be adjudged in their courts to be binding upon him, and the only defences which he can make against it are those which he could make in the courts of Kansas. The question to be determined in this case was not what credit and effect are given in an action against a stockholder in the courts of Rhode Island, to a judgment in those courts against a corporation of which he is a stockholder, but what credit and effect are given in the courts of Kansas in a like action to a similar judgment there rendered. Thus and thus only can the full faith and credit prescribed by the Constitution of the United States and the act of Congress be secured."

It thus appears that "in the absence of fraud and collusion" the judgment recovered against the Kansas corporation is not liable to attack here. It is not sufficient that there be fraud on the part of the defendant alone. The court in Kansas having jurisdiction over both the parties and the subject-matter, it is necessary that the judgment should have been procured by fraud and collusion in order that such judgment may be held open to attack by stockholders of the Kansas corporation. This proposition finds support in this court in Warrington v. Ball, 33 C. C. A. 609, 90 Fed. 464, where it was said:

"Several defenses are set up, one of which is that the judgment sued upon is fraudulent; the allegation being, substantially, that it was obtained by collusion between the plaintiff and the representatives of the bank; that the bank was not indebted to the plaintiff, the certificate of deposit on which he sued having been issued for money furnished to the cashier personally; and that the object of collusion was to avoid a defense, enable the plaintiff to obtain judgment by default and pursue the defendant and other stockholders. The circuit court entered judgment for the plaintiff —holding the affidavit of defense to be insufficient. * * * If the averment of fraud was confined to the certificate of deposit, as the learned judge of the circuit court seems to have believed, a different question would be presented. * * * The fraud averred, however, as we have seen, involves the judgment itself. * * * To bind one by a judgment

to which he is not a party, as provided for by the statute, is barely tolerable. To bind him by such a judgment obtained by fraudulent collusion (as here averred) would be intolerable."

The affidavit in the above case expressly averred that the Kansas judgment on the instrument sued on "was fraudulent and collusively obtained by the said plaintiff." The same doctrine was recognized by the learned circuit judge in the court below in charging the jury, when he said:

"If you find from the evidence that that indebtedness was the indebtedness of the Kansas corporation, your verdict should be for the plaintiff, because if it was the indebtedness of the Kansas corporation that judgment was right. But if you find from the evidence that that indebtedness was in fact the indebtedness of the Colorado corporation, and that the Kansas judgment against the Kansas corporation was obtained by fraud and collusion between the plaintiff bank and Barker, who represented the Kansas corporation, your verdict should be for the defendants."

The Kansas corporation against which the plaintiff in error recovered judgment, as above stated, was incorporated under the laws of that state November 28, 1887, with its principal office in the city of Lawrence, Kansas, with power to establish branch offices elsewhere. Subsequently between September 28, 1889, and October 3, 1889, a branch office was established in Denver, Colorado, as its principal place of business in that state. Thereafter the Kansas corporation carried on business at this office in Denver for some time, the exact duration of which was and is in dispute. Another corporation bearing precisely the same name as the Kansas corporation, namely, the Western Farm Mortgage Trust Company, hereinafter referred to as the Colorado corporation, was created under the laws of Colorado, September 1, 1891, with its principal office in Denver, Colorado. The causes of action in the suit brought by the plaintiff in error against the Kansas corporation in the circuit court for the district of Kansas, were two instruments, one of which was as follows:

"Certificate of Deposit.

The Western Farm Mortgage Trust Company.

($4000$)

$4,000.00–100.                                    Denver, Colorado, Dec. 17th, 1891.

City National Bank, Denver, has deposited with this Company forty hundred 00–100 dollars, payable to the order of itself ninety days after date, in current funds, with * * * per cent. interest per annum, from date of the return of this certificate properly endorsed. No interest after maturity.

No. 9342.   Due Mch. 16–19.

No. 4142.   This certificate not subject to check.

                                                F. M. Perkins, Secretary."

This certificate was endorsed:

"City National Bank, by Jno. J. Hanna, President."

The other of the two instruments sued on was as follows:

"The Western Farm Mortgage Trust Company.

($500$)

$500.00–100                                      Denver Colorado, Nov. 14. 1891.

Ninety days after date pay to the order of myself five hundred 00–100 dollars, value received, and charge to account of            T. C. Henry.

To the Western Farm Mortgage Trust Company,

No. 9185.                                            Denver, Colorado."

This order was on its face accepted, as follows:

"Accepted: The Western Farm Mortgage Trust Co., by F. M. Perkins, Secretary."

It also bore the following endorsement:

"T. C. Henry, Jno. R. Hanna, Feb. 15th, 1894. Int. paid 80. May 8, 1895, Int. paid to Feb., * * * 1895."

No question has been raised, nor is there any doubt that the execution of such instruments of indebtedness as those above quoted was within the corporate authority of the Kansas corporation and of the Colorado corporation. Some stress seems to have been laid by the court below on the fact that the judgment recovered by the plaintiff in error in Kansas against the Kansas corporation was by default for want of a demurrer or answer. The defendant, however, had been duly served with process and was in court by its attorney, and the merits of the case were considered by the court before rendering judgment. The judgment was not by confession. The following appears from the record of the Kansas suit:

"And now, on this 1st day of June, 1896, comes the above named plaintiff, The American National Bank of Denver, by Stebbins & Evans, its attorneys; and said defendant, The Western Farm Mortgage Trust Company, appeared by its attorney, George J. Barker. And thereupon the plaintiff shows to the court that said defendant, The Western Farm Mortgage Trust Company, has been duly served with summons in this action by the United States marshal for the district of Kansas, and that said defendant has failed to demur to or answer the said petition of the plaintiff filed in this action, and has made default. And thereupon this cause came regularly on for trial and the plaintiff, with the consent of the court, waives a jury herein and submits this case to the court; and the court, being fully advised in the premises, finds that said defendant has been duly served with summons herein in the manner provided by law; and the court does hereby approve such service as aforesaid made; the court further finds that all of the allegations in the plaintiff's petition are true, and that there is now due from said defendant to said plaintiff upon the cause of action set forth in said petition, the sum of five thousand nine hundred and thirty-three dollars ($5,933). Wherefore it is by the court considered, ordered and adjudged that said plaintiff, The American National Bank of Denver, have and recover of and from the said defendant, The Western Farm Mortgage Trust Company, the sum of five thousand nine hundred and thirty three (5,933) dollars, together with interest thereon at the rate of eight (8) per cent. per annum from this date, and the costs of this action, taxed at $22.96. Hereon let execution issue."

The principal question before us arises on the third assignment of error. It is based on the refusal by the court below to charge the jury, as requested by the counsel for the plaintiff in error, as follows:

"(2) That the judgment recovered by the American National Bank of Denver, Colorado, the plaintiff, against the Western Farm Mortgage Trust Company of Lawrence, Kansas, in the circuit court of the United States for the district of Kansas, on June 1, 1896, is a valid, binding and subsisting judgment and there is no sufficient evidence in the case to show that said judgment was obtained by collusion and fraud."

The defendants in error claim that the Kansas judgment was by fraud and collusion obtained solely on instruments of indebtedness of the Colorado corporation, and that neither of the said instruments represented any indebtedness of the Kansas corporation. There can be

no doubt that, if the Kansas judgment was not procured by fraud and collusion, it conclusively established the indebtedness of the Kansas corporation to the plaintiff in error upon the instruments sued on. The learned circuit judge properly affirmed the fourth point of the plaintiff in error to the effect that if the Kansas judgment "was not secured through the fraud of the plaintiff, then said judgment is conclusive and binding in this case as to the fact of the indebtedness of the Western Farm Mortgage Trust Company, of Lawrence, Kansas, to the American National Bank of Denver, Colorado, the plaintiff"; adding that the Kansas judgment "of course, would sustain this present action, unless it is shown to the satisfaction of the jury to have been fraudulently and collusively suffered." He also properly affirmed the third point of the plaintiff in error which was to the effect that, the defendants alleging that the Kansas judgment was collusive and fraudulent, "the burden is upon the defendants to prove their allegations by evidence that is clear, precise and indubitable." The question, therefore, is whether the defendants in error have shown by "evidence that is clear, precise and indubitable," or by satisfactory and convincing evidence, that the Kansas judgment was obtained by fraud and collusion; for no less measure would be "sufficient evidence." The learned circuit judge evidently thought that such a degree of evidence had been adduced; otherwise he could not have refused to charge the jury in accordance with the point of the plaintiff in error set out in the third assignment. Certainly there was nothing in the record of the Kansas judgment or of the proceedings relating thereto which show or tend to show fraud and collusion between the plaintiff and the defendant therein or between any of their respective officers or representatives. On the filing by the plaintiff in error of the petition in the Kansas suit setting forth the instruments of indebtedness in question, a writ of summons duly issued April 2, 1896, to, and was served April 7, 1896, on, the Kansas corporation, notifying it to answer such petition by May 4, 1896. This the Kansas corporation omitted to do, but, as already stated, was represented in court by George J. Barker, its attorney, June 1, 1896, when the court, after examining the merits of the case, found that "all the allegations in the plaintiff's petition are true," and entered judgment accordingly. The petition expressly alleged that both of the instruments of indebtedness had been executed by the Kansas corporation, and it does not appear that, save in the present suit, the validity of the Kansas judgment has ever been denied or questioned. Execution on the judgment duly issued and the marshal June 6, 1896, returned that "after due and diligent search I am unable to find any goods or chattels or lands and tenements, belonging to the within named defendant, the Western Farm Mortgage Trust Company, in my district upon which to levy to satisfy this execution or any part thereof. I now therefore return the same wholly unsatisfied." There is a presumption of honesty and fair dealing in the acts of men which is not to be brushed aside by court or jury through mere suspicion or unfounded surmise. The mere fact that no defence was made by the Kansas corporation through its attorney amounts to nothing. Aside from other circumstances, it is indicative that the Kansas corporation had no defence to

the claim rather than that, having such defence, it fraudulently suppressed it. We are unable to agree with the learned circuit judge in his statement that "the instruments sued on   *   *   *   indicated upon their faces that they were liabilities of the Colorado corporation." Upon their face they might have been liabilities of the Kansas corporation, on the one hand, or, on the other, of the Colorado corporation. It is true that they purported to have been executed at Denver, Colorado. The certificate of deposit is headed:

"Certificate of Deposit.

The Western Farm Mortgage Trust Company.

($4000$)

$4,000.00–100                    Denver, Colorado, Dec. 17th, 1891."

And the order is headed:

"The Western Farm Mortgage Trust Company.

($500$)

$500.00–100                    Denver, Colorado, Nov. 14, 1891."

On neither of these instruments does the location of the office in Denver appear, nor that they were executed by the Colorado corporation and not by the Kansas corporation. It is not disputed, but admitted, that the Colorado corporation had its principal office in Denver, and also the Kansas corporation had its principal Colorado office in Denver, where it carried on business for several years; and there was, as before stated an identity of name as between the two corporations. There was thus nothing on the face of the instruments indicating which of the two corporations executed them. The Kansas court, however, determined, under the circumstances already mentioned, that they had been executed by the Kansas corporation. It is, therefore, necessary in order to determine whether the Kansas judgment was procured by fraud and collusion between the parties to go back of that judgment and the proceedings thereon, which are fair and innocent on their face, and ascertain whether it was based on an indebtedness of the Colorado corporation which by fraud and collusion was made to appear to the court in Kansas an indebtedness of the Kansas corporation. One of the principal questions of fact in the case is whether the securities sued on were executed by the Colorado corporation, on the one hand, or, on the other, by the Kansas corporation. It appears that the Colorado corporation, created September 1, 1891, had authority, among other things, "to buy and sell   *   *   *   the capital stock and good will of any other corporation"; that its charter was obtained at the instance of the stockholders of the Kansas corporation who desired to avoid the statutory liability to which as stockholders in a Kansas corporation they might be subject with respect to claims thereafter originating against that corporation; and that the Colorado corporation acquired all the stock and assets and assumed all the liabilities of the Kansas corporation. The two witnesses who speak on the subject of the purpose for which the Colorado corporation was created are R. A. French and F. M. Perkins. French says:

"The Western Farm Mortgage Trust Company, of Denver, Colorado, was organized at the request of the stockholders of The Western Farm Mortgage

Trust Company of Lawrence, Kansas, as there was no stockholders' liability under the laws of Colorado. The Colorado Company was organized about the first of October, 1891, and all the assets of the Kansas Company of every description was transferred by the Kansas Company to the Colorado Company, the Colorado Company assuming all the debts and liabilities of the Kansas Company. The stockholders of the Kansas Company surrendered their certificates of stock for new certificates of stock in the Colorado Company, and certificates of stock were issued to these stockholders by the Colorado Company for the same amount of stock held by them in the Kansas Company, plus 11 per cent. due to the stockholders of the Kansas Company as dividends on their stock. The stockholders of the Colorado Company were the same and the business was the same and methods the same. The Colorado Company occupied the same offices, kept the same books and records and retained the same employees, the only change being in the organization, making the Company a Colorado organization instead of a Kansas organization. The business and offices of the Company were removed to Colorado. * * * The Colorado Company did not receive to exceed five thousand dollars of the assets of the Kansas Company that were not pledged or encumbered and were available to meet the obligations assumed by the Colorado Company."

Perkins says:

"The main purpose was to have the home offices of the corporation in Denver, which was considered as a more central point for the business of the Company. * * * The Colorado Company purchased the assets, good will and property of all kinds of the Kansas corporation and these assets were turned over to the Colorado corporation."

He further states that the Colorado corporation continued the business which the Kansas corporation had been conducting and that, in so continuing the business, it did not use the same offices which the Kansas corporation had previously occupied but "took new offices in the Boston building, in Denver." French states that the Colorado corporation occupied the same offices used by the Kansas corporation. Perkins states that the Colorado corporation in continuing the business which the Kansas corporation had been conducting used different offices. Both of these allegations may well be true. French does not allege that after the Kansas corporation had entirely ceased business it occupied with the Colorado corporation the same offices. Nor did Perkins state at what time the Colorado corporation moved its offices to the Boston building. He states that the Kansas corporation before it suspended business had an office in Denver "for about two years or two years and a half," and that it took some time to complete the transfer from the Kansas corporation to the Colorado corporation,— "perhaps a month or two." French does not state that immediately or forthwith on the organization of the Colorado corporation the assets or liabilities of the Kansas corporation were transferred to or assumed by it. We have discovered no satisfactory evidence that the two corporations did not occupy the same offices until after the transfer from the Kansas corporation to the Colorado corporation had been fully completed. The evidence on the contrary strongly points to the fact that the same offices were used by both corporations until after the transfer had been made. With respect to the precise date when the Kansas corporation fully completed such transfer the evidence is by no means conclusive. Perkins states that he was a director of the

Kansas corporation from the time of its organization in 1887 until it "sold out to the Colorado Company, about the first of October, 1891"; that the transfer was made in "the fall of 1891 at the time of the organization of the Colorado Company"; and that it took "perhaps a month or two" to complete the transfer. Perkins so testified October 31, 1898, which was nearly seven years after the execution of the instruments sued on, and this evidence, standing alone and given so long after the transaction to which it relates, is not, in our opinion, of much weight in determining the question whether the instruments sued on were or were not executed in the offices jointly occupied by the two corporations. It is contended by the defendants in error that the Kansas corporation did not and could not have executed such instruments because it had theretofore suspended business. It is true that Perkins, and he alone, states that the Kansas corporation did no business after its assets were turned over to the Colorado corporation "any further than that was necessary to make the proper transfers." But it is clear that the mere suspension of the business of a corporation, without dissolution, does not destroy it as a legal entity capable of resuming business, and it does not appear how much or what proportion of the shares of stock of the Kansas corporation had been transferred to the Colorado corporation or its shareholders prior to the time of the execution of the instruments of indebtedness. It does not appear that at that time the Kansas corporation was incapable of contracting an indebtedness. But it is contended that Perkins who executed both instruments as secretary, signed them as secretary of the Colorado corporation and not as secretary of the Kansas corporation; because, as alleged, he was at that time secretary of the former but not of the latter corporation; and that therefore, the indebtedness represented by the instruments must have been the indebtedness of the Colorado corporation and not of the Kansas corporation. But the evidence, including all inferences fairly to be drawn from it, does not sustain such contention. As before stated, the date of the certificate was December 17, 1891, and that of the order November 14, 1891. Perkins, though a witness and the person who signed as secretary both instruments, nowhere states that they did not represent indebtedness of the Kansas corporation, nor that they or either of them represented indebtedness of the Colorado corporation. He was in a position to know, and the burden of establishing fraud and collusion rested on the defendants in error. Further he nowhere states that he signed the instruments as secretary of the Colorado corporation, nor that he was secretary of that corporation at the time of their execution, or that he was ever secretary of that corporation. On the contrary it clearly appears from his own statements that he was secretary of the Kansas corporation at that time. A portion of his testimony is as follows:

"Q. What position did you hold in the Kansas Company, and during what period? A. I was director all the time from its organization in 1887, until the Kansas Company sold out to the Colorado Company, about the first of October, 1891. I held the office of Vice President part of the time and Secretary part of the time.

Q. Were you Secretary of the Kansas corporation in 1891? A. I was. * * *

Q. Who was the officer that had in charge this matter of sending out new certificates in the Colorado Company and receiving the old certificates in the Kansas Company? A. That was in charge of the Secretary.

Q. And you were the Secretary at that time? A. Yes, sir. * * *

Q. Did you know George W. Supplee in his lifetime? A. I did.

Q. Do you know whether he was a stockholder in The Western Farm Mortgage Trust Company of Lawrence, Kansas? A. Yes; my recollection is that he was.

Q. Did you know Mr. George W. Supplee personally? A. I did.

Q. I will ask you to state whether the stock ledger of the Western Farm Mortgage Trust Company of Lawrence, Kansas, was in your custody while you were Secretary of that company? A. It was.

Q. Were you acquainted with the manner in which that book was kept and in which accounts were kept by the company with its stockholders in that book? A. I was. * * *

Q. If on the left-hand side, or credit side, of the account of George W. Supplee in the stock ledger of the Western Farm Mortgage Trust Company, of Lawrence, Kansas, there is the entry, 'December 18th, 1891,' can you explain, from your knowledge of the way this book was kept, the significance of that entry? A. I can.

Q. What was the significance of that entry? A. It shows the date of the return of the certificate for cancellation. * * *

Q. Who had charge of the stock ledger of the Kansas Company under your general control? A. Warren Wood."

The uncontradicted evidence of Perkins thus shows that he was secretary of the Kansas corporation until December 18, 1891, or thereafter, covering the period during which the two instruments sued on were executed; and it clearly appears from the documentary and oral evidence that the fifty shares of stock of that corporation theretofore held by George W. Supplee were not surrendered until after the instruments had been executed, namely, December 18, 1891. Now what was the position of George J. Barker, who represented the Kansas corporation in the Kansas suit? He was one of the promoters, incorporators and directors of the Colorado corporation and had also been one of the promoters, incorporators and directors of the Kansas corporation. It does not appear when his stock in the Kansas corporation was surrendered for stock in the Colorado corporation. He is accused of fraud and collusion with the plaintiff in error in procuring the Kansas judgment, involving a violation of trust and of his obligations as a sworn officer of the court. From his position it may fairly be assumed that he knew whether the indebtedness sued for was that of the Colorado corporation, on the one hand, or, on the other, of the Kansas corporation. He treated it as the indebtedness of the latter corporation. If his stock in that corporation had not been surrendered for stock in the Colorado corporation, and if it be assumed —an assumption which, in our opinion, cannot fairly be indulged in—that he was a dishonest man, it is difficult to perceive what motive he could have had in fraudulently procuring a judgment upon which he might have been subjected to the statutory liability under the laws of Kansas. But what is there in the case to justify any finding of fraud against him? There is a primary presumption of honesty and fair dealing on his part. And that presumption should be respected unless it has been overcome by clear and satisfactory

evidence of fraud. But the only ground on which fraud might possibly be predicated is that he knew or had reason to believe that the indebtedness on which the Kansas judgment was rendered was not the indebtedness of the Kansas corporation, but of the Colorado corporation. The facts previously adverted to, however, utterly negative all idea that it has been established by "evidence that is clear, precise and indubitable" that the instruments sued on'did not represent indebtedness of the Kansas corporation. It might with equal reason be contended that French, the acting secretary of the Kansas corporation, upon whom service of the writ of summons in the Kansas case was made, was guilty of fraud and collusion in not promptly informing that corporation that suit had been brought against it for an indebtedness it did not owe; thus disregarding the presumption of honesty and fair dealing on the part of both French and Barker. We cannot go to this length, even if it was unnecessary to show fraud on the part of the plaintiff in error. But to defeat the plaintiff in error it was necessary to show collusive fraud between Barker and the former. Fraud on the part of Barker would not have been sufficient. It was necessary to show collusive fraud on the part of the plaintiff in error by clear and satisfactory evidence. We do not agree with the learned circuit judge when he says:

"There was evidence to justify a finding that both the plaintiff in the suit against the Kansas corporation and the attorney who appeared for the Kansas corporation and suffered judgment to go by default against it knew all the facts. It is difficult to understand how that judgment could have been suffered and taken in good faith to the Kansas corporation and its stockholders. At any rate, the jury have found, I think upon sufficient evidence, that the defense which existed was collusively and fraudulently suppressed."

On careful examination of the evidence we have failed to discover a scintilla of proof of fraud on the part of the plaintiff in error. Both the Kansas corporation and the Colorado corporation had been engaged in business in Denver. Both of them had occupied the same offices. Both of them had precisely the same name. The authorized capital stock of each of them was $3,000,000, divided into the same number of shares. It does not appear that the plaintiff in error prior to the execution of the instruments of indebtedness ever had directly or indirectly any business with either of the corporations, or knew that two corporations existed with the same name, the same capital stock, the same officers, and engaged in the same business. It is quite possible or probable, in view of the fact that the Kansas corporation had been carrying on business in Denver for "about two years or two years and a half" before it suspended, the plaintiff in error may have known of its existence and had business with it. The instruments sued on were signed by Perkins as secretary of "The Western Farm Mortgage Trust Company," and although the burden rested on the defendants in error to satisfactorily establish fraud on the part of the plaintiff in error, there is absolutely no evidence showing or tending to show that the plaintiff in error did not take the instruments with the knowledge or belief that they represented indebtedness of the Kansas corporation. Nor is there any evidence tending to show any

fraud on the part of the plaintiff in error or any of its officers or representatives in the proceedings in the Kansas suit. Fraud must be shown by proof and cannot be established by mere surmise in opposition to the presumption of honesty and fair dealing. We are satisfied that there was no evidence which should have been submitted to the jury on the question of fraud and collusion, and that there was error on the part of the court below in refusing to charge the jury as requested in the second point of the plaintiff in error. The third assignment of error embodying that point is sustained. It is unnecessary to consider questions raised by other assignments of error.

The judgment below is reversed, with directions that the plaintiff in error be accorded a new trial.

GRAY, Circuit Judge (dissenting). I am compelled to dissent from the majority of the court in this case. I think the court below was justified in submitting to the jury the question in the form in which it did. Its language was as follows:

"Was the indebtedness which was the foundation of that suit represented by the four thousand dollars certificate of deposit of December 17, 1891, dated at Denver, Colorado, and the draft for five hundred dollars, dated at Denver, Colorado, November 14, 1891, and accepted by the Western Farm Mortgage Trust Company, by F. M. Perkins, secretary, the indebtedness of the Kansas corporation, or was it the indebtedness of the Colorado corporation? What does the evidence in this case show? That is a question for your determination, and you will determine it upon a consideration of the evidence in the case. If you find from the evidence that that indebtedness was the indebtedness of the Kansas corporation, your verdict should be for the plaintiff, because, if it was the indebtedness of the Kansas corporation, that judgment was right. But if you find from the evidence that that indebtedness was in fact the indebtedness of the Colorado corporation, and that the Kansas judgment against the Kansas corporation was obtained by fraud and collusion between the plaintiff bank and Barker, who represented the Kansas corporation, your verdict should be for the defendants."

Whether the judgment against the Kansas corporation was procured by fraud and collusion between the plaintiff and defendant in that judgment was thus properly made to depend largely upon the question submitted to the jury, as to whether the indebtedness was the indebtedness of the Kansas corporation, or not. If it were, then, as the court told the jury, their verdict should be for the plaintiff. If it were not, the fact that it was not, was most strongly evidential as to such fraud and collusion, as would invalidate the judgment upon which the suit now before us was brought.

The state of the case upon the testimony was peculiar. The Kansas corporation and the Colorado corporation had precisely the same corporate name. They both had offices in Denver, Colo. It is in evidence, however, that the Colorado corporation had been formed September 1, 1891, and that immediately thereafter, the Kansas corporation transferred to it all its business and assets, the Colorado corporation assuming all the debts and liabilities of the assignor. There was also testimony, that was not directly contradicted, that no business was done by the Kansas corporation after the formation of the Colorado corporation and the transfer to it of the assets of the former. No reason has been suggested why the Kansas corporation should

have received the deposit for which it issued its certificate, two months after it had gone out of business. Presumably upon the evidence, the Colorado corporation was the one which should have received the deposit and given the certificate therefor at the time at which it was dated. No testimony was introduced to rebut this presumption. Perkins, who signed the certificate of deposit, had been an officer in both corporations; so also was French. Both were examined in behalf of the plaintiff, but no question was put to them as to the regularity of this transaction. They did not testify, nor were they specifically interrogated, as to which corporation received the deposit and gave the certificate, a fact peculiarly within their knowledge. This was a matter, also, that should have been peculiarly within the knowledge of the plaintiff bank, or the bank from which it received the negotiable paper in suit. No testimony by the officers of either was offered on this point. Barker, who was counsel for the defendant in the Kansas suit, was a promoter and director of the Colorado corporation. The judgment was by default, and recited that Barker, counsel for the defendant, was present, interposing no demurrer, plea or answer. There is no suggestion that any testimony was presented to the court, other than the papers sued upon, which bore the name of the Kansas corporation, the suit being in a Kansas court. No other proof of the identity of the corporation would, in the natural course of things, have been required, counsel for said corporation being present and silent. The character of this judgment, while by no means conclusive, is not without weight, when taken in connection with the other evidence adduced in the case now before us.

On the whole case, a state of things was shown so suspicious, as to require explanation on the part of the plaintiff. The rule as to burden of proof, does not forbid this requirement. The absence of explanatory testimony on its part, tended strongly to confirm such suspicions.

It is admitted that the court below properly charged the jury as to the burden of proof, and as to the necessity of showing fraud and collusion between plaintiff and defendant in procuring the judgment in the Kansas suit.

I do not think the court below could have done otherwise than submit the question, as it did, to the jury, and am of opinion, therefore, that its judgment should be affirmed.