## POWELL, GARARD & CO. v. ERATH COUNTY, TEX., et al.

(Circuit Court of Appeals, Fifth Circuit. May 31, 1921.)

No. 3626.

1. **Counties ⚖➡206(1)—Judgments of commissioners' court, on which warrants are based, are valid against collateral attack.**
   Under the law of Texas, judgments of the commissioners' court, on which warrants are based, approving bills rendered, are binding on the county, unless successfully directly attacked.

2. **Judgment ⚖➡518—Suit by county for cancellation of warrants issued on judgments held direct and not collateral attack.**
   A suit by a county for cancellation of warrants issued on judgments of the commissioners' court *held* a direct and not a collateral attack on such judgments.

3. **Judgment ⚖➡461(5)—To invalidate for fraud, proof must be clear and convincing.**
   Where a judgment is attacked for fraud, the proof must be clear and convincing to warrant its being set aside, and facts which merely create a suspicion, but do not clearly prove the fraud charged, are not sufficient to overcome the effect of the judgment.

4. **Counties ⚖➡165—Warrants held legally issued and valid.**
   The commissioners' court of a Texas county, in making a contract on which warrants were issued, *held* to have legally complied with the requirement of the state Constitution (article 11, § 7), by providing for a tax levy to pay the interest and create a sinking fund for the indebtedness incurred.

5. **Counties ⚖➡165—Warrants issued to refund illegal warrants held invalid.**
   Warrants issued by a Texas county to retire outstanding warrants, some of which were illegally issued, *held*, under the decisions of the Supreme Court of the state, invalid to the extent that the original warrants were invalid.

Appeal from the District Court of the United States for the Northern District of Texas; James C. Wilson, Judge.

Suit in equity by Erath County, Tex., and others, against Powell, Garard & Co. Decree for complainants, and defendant appeals. Reversed.

W. M. Harris and W. H. Graham, both of Dallas, Tex., and Marshall Hicks, of San Antonio, Tex., for appellant.

George Thompson, J. H. Barwise, Jr., and John J. Hiner, all of Fort Worth, Tex., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. On December 17, 1917, Erath county filed a suit in the district court of said county, seeking to have canceled as void one issue of county warrants, for $120 000, and $18,999.14 of another issue of warrants aggregating $35,000. The $120,000 of warrants were issued to pay for certain road work done under a contract entered into between the commissioners' court of Erath county and one Dawson. The case was removed into the United States District Court for the Northern District of Texas at Fort Worth. Thereafter Powell,

Garard & Co. filed a suit in said United States District Court to recover upon certain of these warrants which had matured.

The cases were consolidated as a single cause in equity and the parties ordered to file amended pleadings setting up their contentions, which they did. The first-named contract was negotiated with said commissioners' court, consisting of five members, and was awarded to Dawson by the vote of three of the commissioners, Bowie, Lowe, and Miller. The sums to be paid thereon were payable in county warrants, which were issued in installments on judgments of the commissioners' court, approving the bills rendered and ordering the warrants issued. The $35,000 issue was to refund certain previously issued warrants, including $18,999.14 of warrants issued to Dawson for additional work done on said roads.

The county claimed the $120,000 issue was void because: (1) The instruments were bonds, and not warrants, and had not been authorized by popular vote. (2) Because they included 15 per cent., added for alleged services of Dawson. (3) Because they were road and bridge warrants, and no proper provision had been made in the contract for the payment of the interest due thereon and 2 per cent. sinking fund, as required by the Constitution of Texas; the 15 cents per $100 of the assessed taxable property in the county, authorized to be levied as a tax for road and bridge purposes, having been exhausted by previous charges thereon. (4) Because no authority to impound the revenues of future years existed. (5) Because the contract was not let on competitive bidding. (6) Because the money raised on said warrants was paid into banks and paid out by Dawson on his checks. (7) Because Bowie, one of the commissioners, was bribed to vote for the contract and warrants by the payment of $500 to him to secure such a vote. (8) Because Bowie and Lowe, commissioners, fraudulently approved estimates under the contract in sums in excess of the true amounts earned. (9) Because warrants were issued in the sum of at least $50,000 in excess of the value of the labor and material furnished.

As to said $35,000 of warrants the county insisted that $18,999.14 thereof had taken up warrants issued to Dawson for alleged additional work, when no contract had been made therefor, and no provision for the payment of the interest and 2 per cent. sinking fund on such warrants made at the time when issued; the warrants not being able to be paid out of the existing revenues. All of these warrants are owned by Powell, Garard & Co., who took the same bona fide.

The defendants in their answer moved to dismiss the bill because the same did not state a case, and particularly because it showed that the plaintiff had received large values as the proceeds of said warrants and contract, and no offer to do equity, or tender of the value of such property so received, was made. They also denied all facts attacking said warrants, and set up a counterclaim, asking to be allowed to recover the amounts then due on said warrants, or the reasonable value of the work and labor represented thereby.

The case was referred to a master. He found that the instruments were not bonds, but warrants, and as such were not negotiable instruments, but that the commissioners' court could issue the same without

a previous popular vote; also that the commissioners' court could impound the revenue of future years to pay the interest and principal thereof, and that such a contract did not have to be let on competitive bidding. He also found that the additional 15 per cent. for Dawson's service did not invalidate them; further that the manner in which the money was paid out had not brought any loss to the county.

He declined to make any finding as to the value of the improvements to the public roads of Erath county. This finding, therefore, failed to sustain the allegations of the bill that the warrants were issued in excess of the value of the labor and material furnished under such contract. He held that the approving of the estimates as made, and the orders for the issuance of the warrants by the county commissioners' court, constituted judgments; that they could only be attacked in a direct proceeding, but that the bill in equity filed was a direct and not a collateral attack.

He held that the testimony in the case convinced his mind that the contract was obtained by Dawson, through his agents, by means of bribery of E. Bowie, at the time a member of the commissioners' court, and whose vote was necessary to obtain the contract. He also held that no sufficient provision had been made for payment of the $120,000 of warrants, because he concluded that the existing indebtedness, with the current expenses, exhausted so much of the road and bridge fund as to leave an insufficient amount to pay the interest on the $120,000 of warrants and the 2 per cent. sinking fund. He held that, when the $35,000 of warrants were issued, they included $18,999.14 of warrants issued to Dawson, for which no attempt had been made to provide, and which had not been contemplated to be paid out of current funds, and that this rendered the $35,000 of warrants void to that extent.

It will be perceived that these findings of the master eliminate all attack upon these warrants, except the alleged bribery of Bowie and the alleged failure to make sufficient provision for the payment of interest and sinking fund, as required by Const. Tex. art. 11, § 7, which provides:

"* * * No debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least 2% as a sinking fund."

Exceptions to so much of the report as found against the validity of the contract and warrants, and denied relief to the defendants, were filed by Powell, Garard & Co. No exceptions were filed by Erath county. There are no persons, parties to the suit, except Powell, Garard & Co. and Erath county and its board of commissioners. Powell, Garard & Co.'s sole connection with the case is as owner of the warrants.

[1] 1. These warrants are based on solemn judgments of the commissioners' court, which are binding upon the county, unless successfully attacked. Padgett v. Young County (Tex. Civ. App.) 204 S. W. 1052; Edmondson v. Cummings (Tex. Civ. App.) 203 S. W. 428; Jeff Davis County v. Davis (Tex. Civ. App.) 192 S. W. 291; Busch & Co.

v. Caufield (Mo. App.) 135 S. W. 244; Vogt v. Bexar County, 16 Tex. Civ. App. 567, 42 S. W. 127.

[2] 2. Powell, Garard & Co. insist that these judgments are not open to a collateral attack and that this proceeding is not a direct attack. We do not think that this is a collateral attack on these judgments. On the contrary, it is a proceeding brought for the express purpose of attacking and setting aside the warrants, on the ground that the orders of the court on which they are based were void for the reasons alleged. Such a proceeding is a direct attack. Van Fleet on Coll. Attack, § 5; Crawford v. McDonald, 88 Tex. 629, 33 S. W. 325; Fayssuox v. Kendall County (Tex. Civ. App.) 55 S. W. 583; National Surety Co. v. State Bank, 120 Fed. 593, 598, 599, 56 C. C. A. 657, 61 L. R. A. 394.

[3] 3. Where, however, a judgment is attacked for fraud, including the bribery of one member of the court, the proof should be clear and convincing to warrant its being set aside, and facts which merely create a suspicion, but which do not clearly prove the bribery as charged, are not sufficient to overcome the effect of the judgment. American Nat. Bank v. Supplee, 115 Fed. 657, 52 C. C. A. 293; Fitzgerald v. Walker, 55 Ark. 148, 17 S. W. 702.

4. In this case we do not think the proof sustains the charge in the bill that E. Bowie, one of the commissioners whose vote was necessary, was paid $500 in order to induce him to vote for the contract and thereafter to vote for the warrants. H. H. Shelton, who negotiated the contract for Dawson, and who is charged in the bill with bribing Bowie, positively denied ever having paid, or promised to pay, such money. Dawson was not on hand until 10 days after the contract was made. The uncontradicted proof shows that the three commissioners, Lowe, Miller, and Bowie, who voted for this contract, openly favored the same before H. H. Shelton or any other parties in this transaction appeared on the scene. There is no proof of any money being paid to Bowie, or any negotiation being had with him in regard to the making of this contract. W. A. Shelton, one of the county's chief witnesses, testified that he never heard H. H. Shelton say that he had paid money to any one for any purpose, or that it was or would be necessary to pay any person or any man or any official any amount of money for any purpose.

No attack is made on the proceedings on the ground of any improper conduct of any one, except the alleged bribery of Bowie, and an allegation that Lowe and Bowie approved estimates for greater amounts than should have been, which last charge was not sustained by the master. The only testimony looking to the payment to Bowie of said $500 was a statement made by Netterville in his direct testimony that H. H. Shelton told him that Bowie and Lowe were to get $500 apiece, and that they said the other commissioners would have to be paid $500 each. On cross-examination he qualified this statement, admitting:

"Shelton did not tell me that he had paid it. I don't think Shelton ever paid it, because he didn't do the work."

Shelton denied having any recollection of any such conversation with Netterville, and also denied that he ever paid, or promised to pay, any

commissioner any sum. Lowe entirely contradicts Netterville. Miller was dead; but there is no contention that he was tampered with. The remaining commissioners voted against the contract. The master finds that Netterville's testimony is unsatisfactory, and that he was impeached in other matters and contradicted by the records.

The master finds that the amount of money deposited in bank to Bowie's account, which he regards as a circumstance tending to show bribery, may be entirely innocent, and may have consisted of moneys advanced by Dawson to Bowie to pay the hands in Bowie's district according to the contract. A circumstance which seemed to impress the master, to wit, the possession by Shelton of $1,500, is thoroughly accounted for, without contradiction; Shelton showing that he used $250 to pay Attorney Johnson a fee, which Johnson states he received for professional services, that he redeposited $1,100 in a bank at San Antonio, and that the remaining $150 were used by himself and Dawson for expenses.

The subsequent transactions between Dawson and Bowie were testified to without contradiction to relate to contracts obtained by Bowie, after he ceased to be a commissioner, with other counties, upon which Dawson was to pay him a commission. But the charge of this bill is that previous to the making of this contract Bowie was paid $500 as a bribe. The indictment introduced by the complainant in this case charges that Bowie accepted the $500 and after payment thereof voted for this contract. The testimony in this case completely disproves the charge as made, without contradiction. That Bowie may have been in other matters unprincipled, or that Dawson may not have been sufficiently particular, is not sufficient to set aside the judgments of the commissioners' court and invalidate these warrants, based thereon, now held by Powell, Garard & Co.

[4] 5. The next question is whether the requirement of the Texas Constitution (article 11, § 7), that no debt of any county shall be incurred without at the time provision being made for the interest thereon and at least 2 per cent. as a sinking fund, was complied with. The resolution of the commissioners making this contract provided for the issue of this $120,000 of warrants, and that 8 cents on each $100 of assessed taxable property for the years 1916 and 1917 and 10 cents on each $100 for year 1918 and subsequent years, or as much thereof as should be necessary, be appropriated to the principal and interest thereof. The assessed value of the taxable property of the county at the time was $12,320,180. Six per cent. interest and 2 per cent. sinking fund on the $120,000 of warrants would be $9,600. Eight cents on the $100 levied against the assessed value of the taxable property amounts to $9,856.14, and 10 cents to $12,320.18. The Constitution of Texas (article 8, § 9) provides:

"No county, city or town shall levy more than 25 cents for city or county purposes, and not to exceed 15 cents for roads and bridges."

At the time of the making of this appropriation, the previous warrants against this sum, except a small number, had been refunded, and .7 cents on the $100 had been appropriated to take care of them, 4 cents

of which amount would be released after the year 1917 by the payment of the warrants to which said sum was appropriated. In the case of Lasater v. Lopez (Tex. Civ. App.) 202 S. W. 1043, it is held that the—

"tax of 15 cents authorized by the Constitution for roads and bridges is not a current tax for maintenance purposes, and may * * * be used to be applied to the principal and interest of a debt."

It would therefore appear that at the time these warrants were ordered issued there was a sufficient amount of unappropriated tax to cover the same. It is not made to appear what the additional sums due to said roads and bridges fund, from fines, forfeitures, and other sources, would amount to. We think, therefore, that the taker of these warrants could rely upon the action of the commissioners, in appropriating said portions of said tax to provide for said interest and sinking fund, as a sufficient compliance with the Constitution of Texas, and that therefore the $120,000 of warrants are valid.

[5] On January 8, 1917, the commissioners' court by order created an issue of $35,000 of warrants to refund a number of outstanding warrants previously issued. Among these warrants were $18,999.14 of warrants issued to N. A. Dawson for additional work done on the roads of said county. No contract was made in regard to said work, and no provision for interest thereon to become due or for a sinking fund was made. So much of said $35,000 as represents said $18,999.14 of warrants is attacked as being issued in violation of said article 11, § 7, of the Constitution of Texas.

No appropriation was made to take care of the $18,999.14 of warrants originally issued to Dawson, and we do not think that it could be fairly concluded that Dawson, or the county, contemplated that these original warrants would be paid out of current funds during the year in which they had been issued. The fund had been exhausted by previous appropriations. It has been decided by the Supreme Court of Texas that refunding bonds can only be issued to retire bonds originally valid, and where the new bonds refund a number of old bonds which were not legally issued, only the portion representing the lawful debt is valid. Lasater et al. v. Lopez, Treas., et al. (Tex. Civ. App.) 202 S. W. 1039.

There is no attack made on the remaining $16,000.86 of said refunding warrants, or of the warrants refunded by them, and said warrants so refunded may be taken to have been issued with the expectation of being paid with current funds. McNeill v. City of Waco, 89 Tex. 83, 33 S. W. 322. We think that these $35,000 of refunding warrants are invalid to the extent of $18,999.14, and should be held valid for the balance, the warrants to be reduced pro rata.

In view of their counterclaim, the defendants are entitled to a decree for the amount of principal and interest due upon the valid part of this debt, and also for the amount due as principal and interest upon the $120,000 of warrants.

The decree below is reversed, and the case remanded for further proceedings in accordance with this opinion.